**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Ohio Democratic Party,

Plaintiff,

v.

Frank LaRose, Ohio Secretary of State, *et al.,*

Defendants.

Case No. 2:26-cv-1063
Judge James L. Graham
Magistrate Judge Chelsey M. Vascura

Opinion and Order

Plaintiff Ohio Democratic Party (ODP) brings this challenge to the constitutionality of Ohio law governing a state political party's disbursement of funds to certain campaign committees. The law provides that when a state political party wants to contribute to the campaign committee of a candidate for statewide executive office or the General Assembly, the disbursement must come from the party's State Candidate Fund. *See* O.R.C. § 3517.13(T)(1)(c). ODP wishes instead to use funds in its General Political Account and argues that the law restricts its political speech in violation of the First Amendment to the United States Constiution.

This matter is before the Court on ODP's motion for a preliminary injunction against the enforcement of O.R.C. § 3517.13(T). Its motion rests on the argument that the United States Supreme Court's recent decision in *National Republican Senatorial Committee v. Federal Election Commission*, 609 U.S. __, 146 S. Ct. 2404 (2026) (*NRSC*), dictates the outcome of this case. For the reasons stated below, this Court disagrees and thus denies the motion for a preliminary injunction.

## I. Background

Plaintiff ODP is a political party organized under Ohio Revised Code § 3517.01(A)(1). Defendant Frank LaRose, the Secretary of State, is sued in his official capacity as Ohio's chief elections officer who is charged with initial enforcement of the challenged law. *See* O.R.C. §§ 3517.15(A), 3517.16(A), 3517.16(E)(1). Also named as defendants are the Ohio Election Integrity Commission and its individual members. The Commission serves the appellate body which adjudicates violations of campaign finance laws. *See* O.R.C. §§ 3517.14, 3517.15(B)(1), 3517.16(E)(3), 3517.17.

Ohio imposes certain rules and requirements on state political parties. Among them are the requirements of appointing a treasurer, keeping records, and reporting campaign finance activity. *See*, *e.g.*, O.R.C. §§ 3517.10(D)(1)(a), 3517.106(E)(1)(d), 3517.11(A)(1); O.A.C. § 111:2-4-13. Parties are also subject to monetary limits on the funds they can accept and can contribute. *See* O.R.C. § 3517.102 (setting dollar limits on campaign contributions), § 3517.104 (requiring the Secretary of State to periodically adjust the dollar limits to match the Consumer Price Index).

The Complaint and motion for preliminary injunction put into focus the types of accounts that state political parties keep. Plaintiff refers to the Secretary of State's Campaign Finance Handbook, Chapter 5, which is entitled "Political Party Accounts." *See* Doc. 2-3. The Handbook identifies six types of accounts that a party "may simultaneously maintain." *Id.* at PAGEID 51. The Handbook lists them in this order: Building Fund, General Political Account, Restricted Fund, State Candidate Fund, Judicial Account, and Levin Account. *Id.* The Handbook notes that each of these accounts, except the Judicial Account, "requires a separate bank account and designation of treasurer." *Id.*

So far as this Court's review found, only three of these accounts are mentioned by name in the Revised Code, while one other is mentioned in the Administrative Code. *See* O.R.C. § 3517.1012 (Restricted Fund), § 3517.10(D)(3)(c) (State Candidate Fund), § 3517.1013(B)(1) (Levin Account); O.A.C. § 111:2-3-10(G) (Building Fund). The Court makes this observation because the account which this lawsuit is expressly about – the General Political Account – is neither mandated nor prohibited by Ohio law. *Cf.* Doc. 2-3 at PAGEID 52 (Handbook discussing General Political Accounts without citing a Revised Code or Administrative Code provision).

To understand what a General Political Account can be, it helps to know what a State Candidate Fund is, and thus what the General Political Account cannot be. Generally speaking, the State Candidate Fund is the means by which a political party can contribute to candidates for statewide executive office or the General Assembly. A state political party is not required to establish a State Candidate Fund. *See* O.R.C. § 3517.10(D)(3)(c) (a state political party "may establish a state candidate fund"). But it must establish one if the party intends to contribute to a candidate for a non-judicial, elected position to state office. A state political party "shall not disburse moneys from any account other than a state candidate fund to make contributions to . . . [a] campaign committee of a candidate for the office of governor, lieutenant governor, secretary of state, auditor of state, treasurer of state, attorney general, or member of the general assembly." O.R.C. § 3517.13(T)(1)(c).

When a state political party chooses to establish a State Candidate Fund, it must abide by certain requirements. The party must keep the State Candidate Fund "separate from all other funds." O.R.C. § 3517.10(D)(3)(c). The party's deposits into the State Candidate Fund are limited by the contribution limits set forth in Revised Code § 3517.102. Any contributions received above the limits must be deposited by the party "into one or more accounts that are separate from its state candidate fund." O.R.C. § 3517.10(D)(3)(c). By way of example, the monetary limit which individuals, political action committees, and campaign committees may contribute to any one state political party's State Candidate Fund in a calendar year is $49,847.01.[1] *See* O.R.C. § 3517.102(B)(1)(a)(vi), (B)(2)(a)(v), (B)(5)(a)(i); Sec'y of State's Ohio Campaign Contribution Limits Chart (eff. Feb. 25, 2025 through Feb. 24, 2027) (available at https://www.ohiosos.gov/assets/e-contribution-limits.pdf).

The party is, in turn, limited in what it can contribute to candidates for state office. During a primary election period or general election period (as defined in O.R.C. § 3517.102(A)(5)), a state political party may contribute no more than $937,123.77 to the campaign committee of any one candidate for statewide executive office; no more than $186,926.28 to the campaign committee of any one senate candidate; and no more than $93,047.75 to the campaign committee of any one house candidate. *See* O.R.C. § 3517.102(B)(6)(b); Sec'y of State's Ohio Campaign Contribution Limits Chart.

Now back to General Political Accounts. Under Ohio law, such Accounts cannot be used by a state political party to contribute to the campaign committees of candidates for statewide executive office or the General Assembly. *See* O.R.C. § 3517.13(T)(1)(c). A party also cannot use a General Political Account to contribute funds to its own State Candidate Fund.[2] *See* O.R.C. § 3517.13(T)(1)(a). A violation of Revised Code § 3517.13(T)'s prohibition would subject the party to a monetary penalty and possible criminal prosecution. *See* O.R.C. §§ 3517.99(P), 3517.17.

As for what a General Political Account could be, the Secretary of State's Campaign Finance Handbook provides:

> The general political account is the fund used by a state or county political party to support candidates not subject to the state contribution limits, such as candidates for

[1] Individuals, PACs, and campaign committees may directly contribute up to $16,615.67 to candidates for statewide executive office and the General Assembly. *See* O.R.C. § 3517.102(B)(1)(a)(i–iii), (B)(2)(a)(i–iii), (B)(3)(a–c); Sec'y of State's Ohio Campaign Contribution Limits Chart.

[2] It is also clear that a party may not contribute to candidates for judicial office out of its General Political Account. *See* Ohio Code of Judicial Conduct Rule 4.4(C)(3) (providing that a judicial candidate may not receive a contribution from a political party unless it is made from a separate fund designated solely to receive donations for judicial candidates).

> mayor, city council, or county commissioner. This account is also known as the local political account or the non-state candidate fund.

Doc. 2-3 at PAGEID 52. Other than to state that each account held by a party must have a separate bank account and treasurer, as well as comply with recordkeeping and reporting requirements, the Handbook provides no further guidance on General Political Accounts.

Given the lack of regulation otherwise, both sides of this case correctly agree that "unlimited contributions from permissible sources" may be accepted by a state political party into its General Political Account. Doc. 2-1 at PAGEID 31 (Pl.'s Mot. For Prelim. Inj.); *accord* Doc. 13 at PAGEID 90 (Defs.' Br. in Opp'n). *See also* O.R.C. § 3517.102(C)(4)(b) (providing that a state political party cannot accept contributions from a minor under the age of seven), § 3517.121(C)(1) (cannot accept contributions from a foreign national); § 3517.13(X)(1) (cannot accept transfers of money from the party's own Restricted Fund).

In essence, a General Political Account is defined by what it cannot be used for: to contribute to the campaign committees of candidates for statewide executive office or the General Assembly. ODP brings this lawsuit to challenge the constitutionality of that restriction, and it moves for preliminary injunctive relief so that the restriction may be set aside prior to the upcoming general election.

## II. Threshold Issues Raised by Defendants

In response to the motion for a preliminary injunction, Defendants raise two procedural objections, both related to the timing of the motion and its proximity to the November 3, 2026 general election.

### A. Laches

Defendants first argue that the motion is barred by the doctrine of laches. Laches is defined as "a negligent and unintentional failure to protect one's rights." *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991). "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001). *See also Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 231 (6th Cir. 2007). The party asserting the defense bears the burden of proof. *See McKeon Prods., Inc. v. Howard S. Leight & Assocs., Inc.*, 15 F.4th 736, 742 (6th Cir. 2021).

ODP filed this suit on August 27, 2026. This came 58 days after the Supreme Court's June 30, 2026 decision in *NRSC* on which ODP's legal theory is based. Defendants argue that ODP's delay in filing suit cannot be justified if, as ODP claims, this case amounts to a straightforward application of the *NRSC* decision to Ohio's campaign finance laws.

The Court finds that laches does not bar the request for a preliminary injunction. In the Court's view, 58 days is not an unreasonable amount of time for an entity like ODP (with possibly more than one decisionmaker) to review the *NRSC* ruling, retain counsel, evaluate the ruling's implications for Ohio law, consider and approve the outlay of funds to mount a legal challenge, prepare a legal strategy, and draft and submit a complaint and motion for injunctive relief. The Court finds no evidence of a lack of diligence on ODP's part. The Complaint and motion reflect that ODP carefully prepared this suit, as is appropriate in light of the seriousness of the constitutional issue presented. And as ODP notes, its timeframe was quite similar to the Republican Party of Florida's in bringing a similar suit based on the *NRSC* decision. *See Republican Party of Florida*, *et al. v. The Florida Elections Comm'n, et al.*, Case No. 3:26-cv-4940 (N.D. Fla.) (suit filed on Aug. 18, 2026; motion for preliminary injunction filed on Aug. 21, 2026).

Further, Defendants have not proved prejudice. Though they stress that ODP filed suit just 68 days before the general election, Defendants have not attempted to show how the alleged delay "results in injury or works a disadvantage" to them. *Poundstone v. DEW Res., Inc.*, 75 Fed. App'x 353, 368 (6th Cir. 2003) (quotation marks omitted). Absent from the record is proof of any of the common harms that would support a showing of prejudice, such as substantial monetary expenditures by Defendants during the delay, the loss of evidence, or the unavailability or "dulling of memories of witnesses." *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 412 (6th Cir. 2002).

### B. *Purcell* Principle

Defendants next argue that granting an injunction would run afoul of the principle that "federal district courts ordinarily should not enjoin state election laws in the period close to an election." *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)). "*Purcell* teaches that federal courts must not alter election rules on the eve of an election." *OPAWL - Bldg. AAPI Feminist Leadership v. Yost*, 118 F.4th 770, 774 (6th Cir. 2024) (but noting that "courts have split on whether *Purcell* applies in the campaign finance context"). In addition to considering two of the usual preliminary factors (the likelihood of success on the underlying merits and the irreparable harm which plaintiff would suffer absent an injunction – factors which the Court discusses in Part III below), a court should consider whether plaintiff has

"unduly delayed bringing the complaint to court" and whether "the changes in question are at least feasible before the election without significant cost, confusion, or hardship." *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring).

The Court finds Defendants' invocation of *Purcell* to be unpersuasive in the circumstances at hand. Again, the Court finds no evidence of undue delay on ODP's part. As importantly, the relief requested by ODP would not cause any change to how Ohio conducts its elections. An injunction would simply allow ODP to disburse funds out of its General Political Account to state candidates. As ODP aptly puts it, an injunction would not "require the State to change ballots, retrain poll workers, alter deadlines, or communicate new voting rules," nor would it change the "rules candidates must follow" or "what voters must do to cast their ballots." Doc. 14 at PAGEID 115, 117. The Court also sees minimal risk of confusion or hardship to donors, who would continue to be able to give unlimited amounts to a state political party's General Political Account and who would continue to be subject to existing contribution limits in giving to a State Candidate Fund. To the extent an injunction would impose a burden, it would be an administrative one on ODP, which would have to report and keep records of its disbursements.

## III. Discussion

### A. Preliminary Injunction Standard of Review

Preliminary injunctions are available under Rule 65(a) of the Federal Rules of Civil Procedure. They are extraordinary remedies which are governed by the following considerations: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

"The party seeking the preliminary injunction bears the burden of justifying such relief," including showing likelihood of success and irreparable harm. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000); *accord Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012). The movant must further show that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). The mere possibility of injury is not enough. *Id.*

**B. Likelihood of Success on the Merits**

ODP challenges what it has called the "General Political Account Spending Ban." Doc. 1 at PAGEID 2 (Compl., ¶ 2). It argues that Revised Code § 3517.13(T)(1) is a restriction on ODP's ability to take lawfully-raised funds received into its General Political Account and spend those funds on candidates for statewide executive office or the General Assembly. Because § 3517.13(T)(1) restricts its ability to spend money on political campaigning, ODP says the law must be treated as a limitation on its First Amendment right to freedom of speech. As such, the restriction is subject to scrutiny to determine its constitutionality. ODP maintains that the Supreme Court's decision in *NRSC* squarely applies and requires the law to be found unconstitutional.

In *NRSC*, the Supreme Court considered a First Amendment challenge to the provision of the Federal Election Campaign Act (FECA) which restricted a political party's spending on campaign activities which were coordinated with candidates. *See* 52 U.S.C. § 30116(d). The Court began with the fundamental principal that limits on political parties' campaign spending "necessarily abridge political parties' freedom of speech." *NRSC*, 146 S. Ct. at 2412 (citing *Buckley v. Valeo*, 424 U.S. 1, 19 (1976) (per curiam)). The Court had previously held that "a political party possesses a right to make unlimited independent expenditures during a campaign – that is, expenditures without coordinating with a candidate." *Id.* (citing *Colorado Republican Federal Campaign Comm. v. Federal Election Comm'n*, 518 U.S. 604, 613–616, 618 (1996) (controlling opinion of Breyer, J.)). *NRSC* presented the question of whether that right extended to expenditures made in coordination with the candidate.

To answer the question, the Court assessed "the Government's asserted interests in imposing the limits at issue" and "the fit between the limits and the Government's asserted interests." *Id.* at 2417 (citing *McCutcheon v. Federal Election Comm'n*, 572 U.S. 185, 199 (2014)). At a minimum, the "Government must demonstrate a sufficiently important interest and employ means closely drawn to that interest." *Id.* (quotation marks omitted). In the context of campaign finance regulations, only one Government interest suffices: "preventing corruption or the appearance of corruption." *Id.* at 2418 (quotation marks omitted). And the corruption to be prevented must specifically be *quid pro quo* corruption, or a direct exchange of money for official action. *See id.* at 2418–19.

Turning to the "closely drawn" part of the analysis, the Court considered the argument that the restriction on coordinated expenditures by political parties was necessary to prevent circumvention of FECA's limits on the amounts which can be directly contributed to a candidate.[3] The Court in

[3] The constitutionality of FECA's contribution limits was not in question. The Supreme Court upheld those limits *Buckley*, 424 U.S. at 23–38.

particular was concerned with the practice of earmarking, where a donor contributes to the party with the direction that the money be used on a specific candidate. *See id.* at 2419–20. The Court, however, found that FECA contains three measures which adequately work together to protect against corruption or the appearance of corruption. Those three measures are (1) base limits on contributions, (2) a rule treating earmarked funds as being subject to contribution limits on the source donor, and (3) disclosure rules requiring parties and candidates to publicly disclose the contributions they receive and their spending on campaign activities, including coordinated expenditures. *See id.* at 2420–23. The Court summarized its conclusion as follows:

> In light of the other meaningful prophylactic measures available to the Government, and given the severe infringement on First Amendment-protected political speech that ensues from limiting a political party's spending in support of its candidates, we conclude that the political-party coordinated-expenditure limits are disproportionate and are not necessary and narrowly tailored for the circumvention interest it seeks to protect.

*Id.* at 2423 (quotation marks omitted).

Here, ODP likens FECA's limits on a party's coordinated expenditures to Ohio's restriction on the type of account from which a party can disburse money to state-level candidates. ODP argues that the restriction prevents it from making expenditures, either independently or in coordination with a candidate, from its General Political Account. According to ODP, the restriction is unnecessary to prevent *quid pr quo* corruption or the appearance thereof because state law provides the same three measures of protection which the Supreme Court found sufficient in *NRSC*. *See* O.R.C. § 3517.102 (base dollar limits on contributions to candidates for statewide executive office or the General Assembly), § 3517.13(G)(2)(a) (prohibition on earmarking "to pay the direct costs of producing or airing electioneering communications in the name of another person"), § 3517.10(A), (B) (filing requirements for public disclosure statements of contributions received and expenditures made).

Defendants argue that granting ODP's requested injunction would undercut the first prophylactic measure and thereby increase the risk of corruption. In Defendants' view, allowing state political parties to disburse funds from their General Political Accounts to state-level candidates would essentially eliminate the current limits imposed on parties' contributions to those candidates. Because there is no limit on the amounts which can be placed in the General Political Account, *see* Doc. 2-1 at PAGEID 27 (plaintiff stating that it "may raise unlimited funds into its General Political Account"), Defendants argue that political parties could then in turn contribute unlimited amounts to state-level candidates, which would raise the risk of *quid pro quo* corruption.

The Court finds that ODP has not demonstrated a likelihood of success on the merits. Important to the Court's conclusion is the precise way in which ODP has framed its claim. ODP challenges only Revised Code § 3517.13(T). *See* Doc. 1 at PAGEID 17 (prayer for relief); Doc. 2 at PAGEID 19 (requested terms of a preliminary injunction). It provides that a state political party "shall not disburse moneys from any account other than a state candidate fund to make contributions to . . . [a] campaign committee of a candidate for the office of governor, lieutenant governor, secretary of state, auditor of state, treasurer of state, attorney general, or member of the general assembly." O.R.C. § 3517.13(T)(1)(c). The challenged law is not, on its own terms, a limit on a party's independent expenditures. Nor is it a limit on a party's coordinated expenditures, as was the law at issue in *NRSC*. *See* 52 U.S.C. § 30116(d).

ODP's challenge is to a law that requires a state political party to set up a segregated account if it wishes to contribute to the campaign committees of candidates for statewide executive office or the General Assembly. In that regard, the Court strains to see how *NRSC*'s holding relates to this case. The burden on ODP's interests is of a different nature (setting up an account, with reporting and recordkeeping requirements), but ODP does not challenge the constitutionality of those burdens. *Cf. Buckley*, 424 U.S. at 60–84 (upholding the constitutionality of FECA's reporting, recordkeeping, and disclosure provisions). Section 3517.13(T), in conjunction with § 3517.102, has the effect of capping the amounts that political parties can contribute to state-level candidates. Such contribution limits are constitutional under *Buckley*. *See id.* at 23–38.

In the wake of *NRSC*, challenges have been brought against state laws limiting the amount of a political party's coordinated expenditures. *See Idaho Majority Club v. McGrane*, No. 1:26-CV-00449, 2026 WL 2444932 (D. Idaho Aug. 20, 2026) (issuing a preliminary injunction against a provision of Idaho law which subjects a party's coordinated expenditures to dollar limits); *Republican Party of Florida, et al. v. The Florida Elections Comm'n, et al.*, Case No. 3:26-cv-4940 (N.D. Fla.) (Sept. 14, 2026 Consent Final Judgment in which the court found that the challenged state laws were unconstitutional to the extent they limited a political party's coordinated expenditures). This suit, however, does not present a challenge to any limits on coordinated expenditures.

That is not to say that the parties' briefing ignores expenditure limits under Ohio law. The parties in fact appear to have a point-blank disagreement about the matter. *Compare* Doc. 13 at PAGEID 100 (Defendants citing O.R.C. § 3517.01(C)(17)(d)(iii) and asserting, "Ohio does not limit coordinated expenditures between political parties and candidates") *with* Doc. 2-1 at PAGEID 32 (Plaintiff citing O.R.C. § 3517.01(C)(16), (C)(17)(d)(iii) and arguing that Ohio does limit coordinated

expenditures). But despite relying on *NRSC* as its primary support, ODP has refrained from putting at issue any provisions of Ohio law that might arguably limit the amount of coordinated expenditures on state-level candidates. For this reason alone, the Court finds that ODP has not demonstrated a likelihood of success.

Moreover, Defendants are correct to raise alarm over jeopardizing the government interest at stake. If the Court were to grant the requested relief (striking O.R.C. § 3517.13(T)), then political parties could contribute to state-level candidates from other funds or accounts,[4] including the General Political Account. Ohio's lawmakers tied the dollar limits on contributions to the fact that, by operation of §§ 3517.10(D)(3)(c) and 3517.13(T), State Candidate Funds are the sole means by which state political parties can receive funds for and contribute funds to candidates for statewide executive office or the General Assembly. *See*, *e.g.*, O.R.C. § 3517.102(B)(1)(a)(vi), (B)(2)(a)(v), (B)(5)(a)(i) (certain limits on contributions to State Candidate Funds). Indeed, the limit on a party's own contributions to state-level candidates is constructed by use of the phrase "No state candidate fund . . . shall." O.R.C. § 3517.102(B)(6)(b)(i) ("No state candidate fund . . . shall make a transfer or a contribution . . . to a designated state campaign committee in a primary election period or in a general election period aggregating more than . . . ."). If a party could contribute to state-level candidates from its General Political Account, no provision of Ohio's campaign finance laws would operate to limit the contributions. And no provision limits the amount donors can give to a party's General Political Account. Granting ODP's request for relief would thus eliminate the first line of defense (contribution limits) out of the three safeguards which *NRSC* found to be lawful and effective in combating corruption and the appearance of corruption.

To be sure, ODP represents that it is not challenging Ohio's contribution limits. *See* Doc. 14 at PAGEID 118 (Plaintiff stating, "This case is not about contribution limits."). But granting the relief requested while preserving Ohio's contribution limits regime would require the Court to rewrite numerous provisions of the Revised Code which use the term "state candidate fund" as a building block. *See* O.R.C. § 3517.102 (using the term "state candidate fund" over 25 times). A federal court should decline to engage in such a task absent a convincing showing of success on the merits, which ODP has not demonstrated at this early stage.

---

[4] That is, unless other provisions did not dictate otherwise. *See*, *e.g.*, O.R.C. § 3517.1012(A)(3) (specifying the permitted uses of a Restricted Fund).

### C. Other Preliminary Injunction Factors

ODP has also failed to show the other preliminary injunction factors weigh in its favor. OPD argues that it will suffer irreparable injury absent an injunction because it cannot spend as much money as it would like in support of state-level candidates during the current election season. Again however, § 3517.13(T) does not limit expenditures. By its own terms, it merely requires that a political party's contributions to a state-level candidate be disbursed out of the State Candidate Fund.

Finally, the State and the public possess an important interest in preserving the status quo. As explained above, granting the requested injunction would have the undesirable effect of removing the dollar limits on political parties' contributions to candidates for statewide executive office and the General Assembly.

## IV. Conclusion

For the reasons stated above, Plaintiff's motion for a preliminary injunction (Doc. 2) is DENIED.

*s/ James L. Graham*
JAMES L. GRAHAM
United States District Judge

DATE: September 21, 2026